Case number 20-3006. United States of America v. Issam Hussein Abu-Ghosh, also known as Issam Ghosh, also known as Issam Hussein Husuna, also known as Issam Ghosh Appellant. Ms. Rolands for the appellant, Mr. Lenners for the appellant. Good morning. Ms. Rolands, you may proceed. Thank you, Your Honor. Prior to sentencing, the judge directly linked answering the court's questions about other possible crimes to acceptance of responsibility, saying that this court will not tolerate his refusal to answer questions and will not sentence him until this is done, and silence is inconsistent with acceptance of responsibility. Even after the parties repeatedly explained the law, the judge kept going back to it. At the final sentencing hearing, he punished Mr. Abu-Ghosh more harshly for asserting his privilege. The judge said that Mr. Abu-Ghosh failed to comply with the court's order by doing an end run around pretrial services review. He actually said the probation office – I think that was a misstatement because the probation office was not involved. Well, Ms. Rolands, the term end run, as you said in your opening brief, effectively, what you've said just now, that it was meant to describe Mr. Abu-Ghosh's evasion of pretrial services and that that's evidence that he's – that the judge was punishing Mr. Abu-Ghosh for exercising his Fifth Amendment rights. The government, in its response, said no, the end run phrase was about Mr. Abu-Ghosh's failure to preclear his tendering of checks in excess of the terms of his pretrial release. And your reply doesn't take that up. Why shouldn't we accept the government's reasonable interpretation of those record events? I appreciate the court's interpretation of end run as evasion. That is exactly what it means, I feel. And here, he talked about the probation office or pretrial services review. The thing that the probation office – I'm sorry, pretrial services was reviewing were the questions that the court asked them to ask Mr. Abu-Ghosh. The allegation was that he deposited checks that were in violation of the limits that the court had set. Not that he didn't seek permission in advance, he wouldn't have gotten permission because the court had set a $1,000 limit and obviously checks that one is writing as part of a business will sometimes exceed $1,000. So, failing to comply with the court's order by doing an end run around pretrial services review really had to refer to the fact of his silence. He brought this up over and over and over again. He was very concerned with it. So, yeah, I don't think it's reasonable to interpret that as simply being about the new arrest. And certainly, the court can't find, you know, by a reasonable probability, beyond a reasonable doubt that that is what happened. The law entitled the judge to withhold the reduction for acceptance or responsibility based on a new crime. We simply don't have certainty that that's what he did. There's at least a reasonable doubt about whether that happened. And for that reason, we ask the court to remand the case to a different judge for the sentencing. If you put us no further questions about that, I'll move on to the second issue, which is the judge in this case was willing to manipulate the sentencing guidelines for his own benefit by awarding a sentence reduction for acceptance of responsibility to defendants who go to trial, but not when they plead guilty unless they do so well in advance of the trial date. This policy isn't really about assessing acceptance of responsibility. It's about accomplishing the judge's goal. The judge's thoughts about defendants who plead guilty were discussed at nearly every status hearing. He had personal strong feelings about the matter. He devised a policy to disincentivize defendants from pleading guilty. So it's natural to infer. No, I mean, I believe the way Judge Leon articulated it was to remove the trial penalty that he was going to offer acceptance of responsibility points, both for someone who pleaded guilty, but also make them available in appropriate circumstances to someone who went to trial to remove the penalty on going to trial in the event that the defendant would so choose. And I recognize that there were comments that might be thought to create parents of impropriety when the judge talked about the need for experience on the part of attorneys and judges. But at the end of the day, during the sentencing hearing, none of that was mentioned whatsoever. It was all the evidence of the bad checks in Loudoun County in April 2019 that was the basis, the stated basis, and the only thing that was mentioned as the basis during the sentencing hearing. Why isn't that enough? Well, if I could first just take issue with the court's characterization, the first time this came up at the first status hearing, the judge said that he wanted his brilliant law clerks to devise a way to disincentivize guilty pleas. At the next hearing, he said, my brilliant law clerks have come up with a way to disincentivize guilty pleas, and he couched it in terms of eliminating the trial penalty. But that was not actually what he did. What he did was eliminate the trial penalty and and also tell defendants, if you plead guilty, you will not get acceptance of responsibility. Only if you plead guilty within the two weeks before trial, which wasn't at issue here. Right. Well, this commentary began long, long before Mr. Abu Ghosh pled guilty. And what he what he's done is set up a policy where if you if you cause the government and the trial and the judge to do some trial prep, to get ready for trial, no matter what you say after that, accepting responsibility for what you've done, you don't get the policy. But if you cause them to prepare for the trial, to do that work and then spend six weeks in trial with multiple witnesses, you will get acceptance of responsibility. I think that it's very clear that he's using the guidelines as a check for his own purposes. The Loudon County a check, the two checks. But it's not simply that he didn't clear through the pretrial services, but but it also was a criminal offense, wasn't it? I mean, he was one of the checks supposedly was phony and he's drawing money out from it. So he's committing a criminal offense while he's in between his indictment and the trial date. And yet you think he was entitled to acceptance of responsibility? I agree that a court can, of course, deny a defendant a reduction for acceptance of responsibility when they've committed post new crimes after they're guilty. But it's not at all clear that that's all that motivated the judge. Yeah, but we can't get into the business of mind reading on the face of it, objectively looking at it without getting into subjective motivations. The judge was I mean, I thought I think it'd be remarkable if he gave him a bump for acceptance of responsibility after you know what he did in Loudon County. It's often the case that judges, maybe always the case that judges can do something in a way that's legitimate or in a way that's illegitimate. And if there's reasonable doubt based on the record that he was creating a policy that misuses the acceptance of responsibility guideline, then I think there is a reasonable doubt as to whether that was the sole motivation. Ms. Roland, you keep mentioning the reasonable doubt standard. Is that the standard by which we assess the propriety of the sentence here? I believe it is, Your Honor. In the Sonny case, the court said, for most constitutional errors, an appellate court is to reverse if it entertains a reasonable doubt about whether the error affected the outcome. So yes, I think that is the appropriate standard. And I think there is a reasonable doubt here whether the judge's manipulation is antipathy toward guilty pleas affected the outcome. For that reason, and the reasons previously stated, we ask the court to remand this case to a different district court judge. Thank you. We'll give you some time for rebuttal. Mr. Lennox. Thank you, Your Honor. Good morning, and may it please the court, Dan Lennox for the United States. The district court in this case identified one reason and one reason only for refusing to give the defendant credit for acceptance of responsibility. And that was the fact that the defendant had cashed fake checks in Loudoun County after his guilty plea while he was pending sentencing, conduct that was both criminal and did not comply with the court's order that the defendant notify pretrial services whenever he cashed a check over $1,000. And just for clarity of the court's order, my assumption was that there was a role for getting clearance from the court, from the officer about, for example, if you inherit money over $1,000, can you clear it with pretrial services or not? So I actually haven't seen the specific order that was entered. I don't believe it's in the record, but there was discussion of the fact that, for example, if he had to pay rent, that there would be a way he could pay rent, even if it was over $1,000. Or similarly, if he had a car payment, that that payment is something that could be made. So clearly when this was the discussion that occurred before the order was entered, but the parties envision circumstances in which he might have to get preclearance. Here, he didn't even attempt to, which I believe was the court's point. Did he have to? Yeah. The way you framed it, I hadn't thought about this, but you said it was a prohibition of cashing checks over $1,000 without the approval of the pretrial services group. But he didn't cash these checks. He deposited them. It didn't get cashed back. He started writing checks on new accounts. Perhaps, Your Honor, I'm speaking more vaguely than I should. I don't know what the exact order said, but my understanding is that it covered him engaging in transactions involving checks over $1,000. Yeah. Well, it doesn't matter because the thing that seems to be important here is that both of those checks amounted to criminal fraud. I agree, Your Honor. And that's... I think the only question was whether it was plausible that the reference to an end run around pretrial services was a reference to his failure to go to pretrial services before handling such checks, or was it a reference to punishing Mr. Abugosh for exercising his Fifth Amendment right? So it does seem that it's important to the government's theory whether there was some interaction with pretrial services other than the mandated interview that might be the subject of the end run comment. Is that right? Your Honor, yes. There were two end run comments at the sentencing hearing. The defendant does not dispute the clarity of the first, which the district court made when refusing to grant acceptance of responsibility. That's at pages 631 to 632 of the appendix. That's when the district court said, I'm not giving you acceptance of responsibility. The court said, I find by preponderance of the evidence that the checks were fictitious and that there was every reason for the defendant to believe they were fictitious. The court then went on to say, so he did an end run on contacting the probation office on both occasions, and on the occasion of opening up a new bank account, which was also in violation of this court's order. And so that end run comment was plainly about the requirement that he get pretrial services approval before engaging in transactions with checks over $1,000. Later in the hearing, when the defendant asked to be able to self-surrender and the court denied that request, the court again used this end run around probation language, but again, tied it to his failure to get pretrials approval. The court said by doing an end run on the probation office's review, by opening bank accounts you weren't supposed to without checking them with them first by negotiating checks over $1,000. And so again, the end run language was expressly tied to this requirement that he get pretrials approval before opening businesses or cashing checks. And so there is no doubt, reasonable or otherwise, that the basis for the district court's denial of acceptance of And is the standard reasonable doubt? You know, our brief didn't ultimately find cases setting forth the standard of when you look behind the district court's stated reasons for acting and guess at his ulterior motivations. But Ms. Rowland correctly said that Sinai has a quote from another case suggesting that when this court entertains a reasonable doubt about whether there was constitutional error in the sentencing, a new sentencing is appropriate. And if the comments about trial and the, you know, getting rid of the trial penalty or creating opportunity for lawyers and judges to get trial experience, all of those comments were made at sentencing and if there were not the intervening handling of the bad checks. Is there any question? Does the government is the government's position that that would have not been error or So I Certainly for the Fifth Amendment, we have not argued that the district court may deny acceptance of responsibility because the defendant invoked his Fifth Amendment rights, although that is an open question. The Supreme Court did not address it in Mitchell. This court did not address it in Sinai. We did not address it in our brief. So on that point, we haven't taken a position and we don't think this court needs to, you know, if instead the court was saying, because you chose to plead guilty instead of exercising your constitutional right to go to trial. I am not awarding acceptance of responsibility. I'm not, I guess I don't know the answer to that. I don't know if that's permissible or arguably permissible, but it's certainly not what occurred here. It doesn't appear to be what occurred here as the judge announced his own policy. He said, If you plead guilty, you're eligible. If you go to trial, I'm still going to allow you to be eligible. The only exception would be if you pled guilty late, you know, within two weeks, which isn't what happened here. But I think there's a distinct concern that Ms. Rowland has raised, which is just the insistence, you know, repeatedly. I think it was seven times, she says in her brief, the judge clearly wanted the case to go to trial. And he makes that very clear and very explicit. And I guess the question is, even if we find no error, you know, what to make of that? Is that a problem? Is that something that a district judge should avoid doing? Or do you see that as really neither here nor there? Well, I think I have two answers to that, Your Honor. The first is that this district judge's policy of allowing defendants to get acceptance of responsibility credit, even when they go to trial, is a pro-defendant policy. It benefits defendants in the vast majority of cases. And so it's hard to see how this case presents an issue to criticize that policy. As far as the district court pushing this case to trial, ultimately accepted the defendant's guilty plea. But also, I think the record reflects that the district court was not, in fact, pushing this case to trial. It was indicted in September of 2015 and lingered for years. The district court was routinely giving the defense 60-day continuances to review discovery, to consider plea agreements. He was, you know, regularly allowing lengthy delays in the case to review discovery. And so there was no, he, yes, he repeatedly said it would be a good thing to have more trials. And I have a policy that allows defendants to get acceptance of responsibility. And certainly he was frustrated after he accepted the guilty plea and realized that this defendant had gotten what, in his words, was a sweet deal. But certainly given the something like three-year delay between indictment and the guilty plea and another year and a half before sentencing, there was no insistence on going to trial. This was not the little bit of a confusion about the government's position on the criminal conduct that's relevant to acceptance of responsibility. Because as I understand it, you, well, you argued in your brief that any post-indictment criminal conduct is relevant to acceptance of responsibility. But the government, consistent with the defendant, took the position that the earlier, the 2017 Fairfax charges didn't stand in the way of getting credit for acceptance of responsibility. And then the Loudoun County charge did. But if post-indictment is the measuring point, the two events seem equally relevant. I think they're relevant for different purposes. I think the government's view is that any post-indictment criminal conduct is relevant for acceptance of responsibility as the guidelines have been written. But in this particular case, because the government knew about this post-indictment conduct and nonetheless entered a plea agreement with that knowledge in which the government agreed to give the defendant acceptance of responsibility, that in this case, by entering that contract, by entering that plea agreement, it was saying that that particular conduct was not relevant in this specific case because the However, the subsequent Loudoun County conduct, which postdated the agreement, was not conduct the government knew about at the time. And the government ultimately agreed with pretrial and the court that that continued criminal conduct and continued fraud meant that the defendant should not be granted acceptance of responsibility credit. There are no further questions. We'd ask that the judgment of the district court be affirmed. Thank you, Mr. Oland. I think you had only a few seconds left, but we'll give you two minutes for rebuttal. Thank you. Regarding the delay between indictment and resolution by either a guilty plea or trial, it's just unrelated to whether the court was pushing Mr. Abagosh in one direction or the other. He certainly wasn't pushing to make it happen quickly, but what he was pushing for is what's relevant. We do not criticize a policy that would eliminate the so-called trial penalty. What we point out here is that that's not all that the district court did. The district court created a policy in which defendants are in the very strange position of not getting acceptance of responsibility points if they don't accept responsibility before the judge puts some work into the case, but they can get it if the judge puts a lot of work into it. You're criticizing the two-week limitation, but that's not relevant to this case. That didn't bear on this case. The two-week window is the basis of the argument you just made, but that's just not relevant here. It is not relevant to Mr. Abagosh directly. I think the reason we bring it up is that it is evidence of the judge's antipathy toward guilty pleas and the fact that he wasn't simply just doing defendants a favor by eliminating the trial penalty. The delays in this case were at the defendant's request or you haven't argued that the delays are the judges prodding the defendant to go to trial or resistance to accepting a guilty plea? Absolutely not. I think the delay is completely irrelevant to any legal issue here. Okay. And finally, I just want to say the government has urged you to look at context, and I think you should, and to listen to the sentencing, but then stated a legitimate factor for its sentence at the sentencing hearing. We would be right to question whether the previously stated views affected the sentence, especially where the court doesn't disavow its earlier position. Of course, that's not the case here, but I think it's a useful analogy. Ms. Rowland, did you ever object when the district court said all these things that you think the district court shouldn't have said? There was one objection. I have to look in the record, but there was one objection where the defense attorney suggested an outward plea, and I'm sorry. The judge, she suggested an outward plea and suggested that it would be in the public's interest because it would save the government and the court the trial. And the judge said, we don't want you to save us a trial. We don't want that. And she said, well, but it is in the public's interest to accept a plea in this case. All right. Thank you. Any other questions? No. All right. Thank you. Counsel will take the case under advisement.
judges: Pillard, Walker, Randolph